IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DONNA F. KEITH,                          Case No. 6:11-cv-06130-AA
                                         OPINION AND ORDER
          Plaintiff,

     v.

MICHAEL ASTRUE,
Commissioner of Social
Security,

          Defendant.

_____


Kathryn Tassinari
Mark A. Manning
Harder, Wells, Baron & Manning, P.C.
474 Willamette St., Suite 200
Eugene, Oregon 97401
     Attorneys for plaintiff

S. Amanda Marshall
United States Attorney
Adrian L. Brown
Assistant United States Attorney
1000 SW Third Ave., Suite 600
Portland, Oregon 97201

PAGE 1 - OPINION AND ORDER

Kathryn A. Miller
Special Assistant United States Attorney
Office of General Counsel
Social Security Administration
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, Washington 98104
    Attorneys for defendant

AIKEN, Chief Judge:

Plaintiff, Donna F. Keith, brings this action pursuant to the Social Security Act (the Act), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner. The Commissioner denied plaintiff's application for Title XVI supplemental security income (SSI) disability benefits under the Act. For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

## PROCEDURAL BACKGROUND

On August 30, 2007, plaintiff protectively filed an application for SSI benefits. Tr. 102-08. After the application was denied initially and upon reconsideration, plaintiff timely requested a hearing before an administrative law judge (ALJ). Tr. 65-69, 71-73. On April 3, 2009, an ALJ hearing was held before the Honorable Moira Ausems. Tr. 28-61. On November 27, 2009, ALJ Ausems issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 9-27. On February 7, 2011, the Appeals Council declined to review the ALJ's decision. Tr. 1-3, 6-8. Plaintiff then filed a complaint in this Court.

## STATEMENT OF THE FACTS

Born on February 28, 1975, plaintiff was 32 years old on the alleged onset date of disability and 34 years old at the time of

PAGE 2 - OPINION AND ORDER

the hearing. Tr. 102. Plaintiff left school after completing the
eighth grade and has no past relevant work experience. Tr. 21, 183.
She alleges disability beginning May 1, 2007 due to a neurological
disorder, a seizure disorder, and an anxiety or panic disorder. Tr.
73, 102.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is
based on proper legal standards and the findings are supported by
substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498,
501 (9th Cir. 1989). Substantial evidence is "more than a mere
scintilla. It means such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion." Richardson v.
Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v.
N.L.R.B., 305 U.S. 197, 229 (1938)). The court must weigh "both the
evidence that supports and detracts from the [Commissioner's]
conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir.
1986).

The initial burden of proof rests upon the claimant to
establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th
Cir. 1986). To meet this burden, the claimant must demonstrate an
"inability to engage in any substantial gainful activity by reason
of any medically determinable physical or mental impairment which
can be expected ... to last for a continuous period of not less
than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process
for determining whether a person is disabled. Bowen v. Yuckert, 482

PAGE 3 - OPINION AND ORDER

U.S. 137, 140 (1987); 20 C.F.R. § 416.920. First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Yuckert, 482 U.S. at 140; 20 C.F.R. § 416.920(b).

At step two the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 416.920(c). If not, the claimant is not disabled.

At step three the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. § 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 416.920(e). If the claimant can work, she is not disabled. If she cannot perform past relevant work, the burden shifts to the Commissioner.

At step five the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; 20 C.F.R. § 416.920(e) & (f). If the Commissioner meets this burden and proves that the claimant is able to perform other work which exists in the national economy, she is not disabled. 20 C.F.R. § 416.966.

## DISCUSSION

### I. The ALJ's Findings

At step one of the five-step sequential process, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 14, Finding 1. At step two, the ALJ found that plaintiff had the following severe impairments: pseudo-seizures, post-traumatic stress disorder (PTSD), a panic disorder with agoraphobia, alcohol dependence, amphetamine abuse in remission, a cognitive disorder, and a personality disorder. Tr. 14, Finding 2. At step three, the ALJ found that plaintiff's impairments did not meet or equal the requirements of a listed impairment. Tr. 14-15, Finding 3.

Because she did not establish disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ determined that plaintiff had the residual functional capacity (RFC) "to perform work at any exertional level that will allow her to avoid concentrated exposure to workplace hazards such as machinery and heights; that does not require understanding, remembering, and carrying out more than simple, routine tasks; and that would require no more than casual contact with the general public and co-workers." Tr. 15-16, Finding 4.

At step four, the ALJ found that plaintiff did not have any past relevant work. Tr. 21, Finding 5. At step five, the ALJ determined that there are jobs that exist in significant numbers in the national and local economy that plaintiff could perform, such as nut sorter, household appliance patcher, and taper. Tr. 21-22,

PAGE 5 - OPINION AND ORDER

Finding 9. Accordingly, the ALJ found that plaintiff was not disabled within the meaning of the Act. Id.

## II. Plaintiff's Allegations of Error

Plaintiff alleges the ALJ erred by: 1) improperly rejecting her testimony; 2) improperly evaluating the medical evidence; and 3) failing to include all of her limitations in the RFC assessment and hypothetical questions posed to the VE.

### A. Plaintiff's Credibility

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting her subjective symptom testimony regarding the extent of her impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of and the record contains no affirmative evidence of malingering, "the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1283-84 (9th Cir. 1996). When the "ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which ... testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).

Here, the ALJ resolved that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of

PAGE 6 - OPINION AND ORDER

the alleged symptoms; however, the ALJ also found that her
testimony regarding the extent of those symptoms was not credible
to the extent that it was inconsistent with other evidence in the
administrative record. Tr. 18-21. Specifically, the ALJ first noted
that plaintiff's hearing testimony regarding her alcohol use was
inconsistent with her prior statements.[1] Tr. 18-20. Inconsistent
statements, or lack of candor, about alcohol and drug abuse is a
clear and convincing reason for an adverse credibility finding.
Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999).

At the hearing, plaintiff testified that she had been sober
since 2001, but had relapsed twice, once in November 2007, and
again in January 2009. Tr. 16-17, 47-48. Plaintiff characterized
the latter relapse as minor, "maybe a bottle of wine," motivated by
ineffective pain medication. Tr. 48. Plaintiff also definitively
stated she has not used alcohol since January 2009. Tr. 50.

As the ALJ noted, however, in July 2007, plaintiff reported

---

[1] The ALJ's discussion of the evidence, however, included
several inaccurate citations to the record. The ALJ cited to two
medical reports in support of the finding that plaintiff was
consuming alcohol after she reported stopping. Tr. 18. These
reports merely summarize plaintiff's statements regarding her
alcohol use from earlier examinations. Tr. 225, 499. The ALJ also
cited to a statement from plaintiff's boyfriend in support of her
determination that plaintiff was experiencing alcohol withdrawal
in 2008, despite plaintiff's testimony to the contrary. Tr. 18.
This evidence instead shows that the boyfriend was speaking about
himself. Tr. 266. Thus, plaintiff is correct that the ALJ's
mischaracterization of the record constitutes error; as discussed
above, substantial evidence nonetheless supports the ALJ's
credibility finding. Consequently, the error was harmless. See
Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir.
2006); see also Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d
1155, 1162-63 (9th Cir. 2008).

drinking four or more alcoholic beverages a day and indicated current alcohol use, including the "need to cut down." Tr. 18, 235. In August 2008, plaintiff consumed five alcoholic drinks before being admitted to the ER. Tr. 499. Three months later, another medical report shows that plaintiff drank hard liquor two days before an examination and continued to drink beer thereafter. Tr. 578. Finally, on April 14, 2009, plaintiff reported recently consuming a beer. Tr. 520.

Finding this evidence belied her hearing testimony, the ALJ concluded that plaintiff was not credible. Such a conclusion is legitimate and supported by substantial evidence in the record. Verduzco, 188 F.3d at 1090. For this reason alone, the ALJ's credibility determination is upheld.

Moreover, while neither party addressed these reasons in their briefs, the ALJ found that plaintiff was not fully credible because her testimony was inconsistent with the Cooperative Disability Investigation Unit (CDIU) report[2] and the medical evidence.[3] Tr. 17-21. Inconsistencies between the claimant's testimony and the record

---

[2] The CDIU investigated plaintiff based on suspicion of secondary gain due to inconsistencies in her reporting. Tr. 264.

[3] While this Court cannot uphold the ALJ's decision based on grounds the ALJ did not raise, it nonetheless notes that there is additional evidence in the record belying plaintiff's subjective statements. For example, at the hearing, plaintiff testified she lost her housekeeping job as a result of her involuntary twitching and memory problems. Tr. 16-17, 34-35. Plaintiff, however, reported to a clinician that she quit this job after being confronted about an allegation a fellow employee had made. Plaintiff was later told she could get her job back, but decided against it. Tr. 198.

is also a clear and convincing reason for making an adverse credibility finding. Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999).

At the hearing, plaintiff reported suffering from involuntary bodily movements, which frequently caused her to drop things, created difficulty using knives and eating, and kept her awake at night. Tr. 17, 36-38, 49, 54. Plaintiff also testified that seizures significantly limited her ability to spend time outside of her house, walk, balance, and stand. Tr. 17, 37-39. Additionally, plaintiff stated that, because of her panic and anxiety disorders, she was unable to have a social life and experienced difficulty focusing and remembering. Tr. 17, 41-42, 47, 54-55.

The ALJ found this testimony was contradicted by the observations of the CDIU investigator, who noted that plaintiff had no difficulty talking, standing, or walking; he also remarked that her cognitive skills appeared intact and she demonstrated no signs of shaking or tremors. Tr. 265-266. Further, the investigator reported that plaintiff was able to speak clearly and articulately, as well as recall details of historical events, the names of people in the area, and her recent doctor visits. Tr. 266.

The ALJ also discussed several examining and consulting doctors whose medical reports undermined plaintiff's testimony. Dr. Mia Schriener, M.D., and Dr. Judith Eckstein, Ph.D., both examined plaintiff and did not observe any involuntary movements. Tr. 19. Drs. Dorothy Anderson, Ph.D, Frank Lahman, Ph.D., Linda Jensen,

PAGE 9 - OPINION AND ORDER

M.D., and Sharon B. Eder, M.D., each reviewed plaintiff's medical file and opined that plaintiff's descriptions of her symptoms were neither credible nor supported by the medical evidence. Tr. 20-21, 275, 289, 332, 335. Based on these additional inconsistencies, the ALJ concluded that plaintiff was not fully credible. Tr. 21.

Therefore, the Court finds that the ALJ provided clear and convincing reasons, supported by substantial evidence, to reject plaintiff's testimony.

## B. Evaluation of the Medical Evidence

Plaintiff next asserts that the ALJ erred by not giving clear and convincing reasons for rejecting the opinion of Dr. Eckstein. Plaintiff further argues that this opinion establishes the listing criteria for 12.02 (organic mental disorders), 12.06 (anxiety disorders), and 12.08 (personality disorders), under 20 C.F.R. pt. 404, Subpart P, Appendix 1.

In social security cases, there are three sources of medical opinions: treating doctors, examining doctors, and non-examining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). In general, opinions from treating doctors carry more weight than those of examining doctors; likewise, opinions of examining doctors carry more weight than those of non-examining doctors. Ramirez v. Shalala, 8 F.3d 1449, 1453 (9th Cir. 1993). To reject a treating or examining doctor's uncontradicted opinion, the ALJ must supply "clear and convincing reasons" for doing so. Lester, 81 F.3d at 830. If, however, the treating or examining doctor's opinion is contradicted, the ALJ may reject it for "specific and legitimate

PAGE 10 - OPINION AND ORDER

reasons" supported by substantial evidence in the record. Id. at 830-31.

After a single examination on December 18, 2007, Dr. Eckstein diagnosed plaintiff with PTSD, a panic disorder with agoraphobia, alcohol and amphetamine abuse in remission, a mathematics disorder, a personality disorder with avoidant and obsessive-compulsive traits, chronic seizures, and possibly Huntington's disease. Tr. 259-62. Dr. Eckstein also assessed plaintiff with marked restrictions in social functioning, moderate restrictions in activities of daily living, and moderate restrictions in concentration, persistence, or pace, as well as four episodes of decompensation. Tr. 261-62.

As the ALJ correctly noted, Dr. Eckstein's findings are contradicted by other medical evidence, including reports from Drs. Anderson and Lahman. Tr. 19-21, 287-89, 335. Accordingly, the ALJ only needed to provide specific and legitimate reasons to reject Dr. Eckstein's opinion. Lester, 81 F.3d at 830-31.

The ALJ gave Dr. Eckstein's opinion little weight because it was based on a one-time examination, in which the doctor did not have plaintiff's medical records. Tr. 19. An ALJ can consider a doctor's familiarity with information in the record when determining the weight accorded to their medical opinion. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007). When evaluating conflicting opinions, however, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief and conclusory. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir.

PAGE 11 - OPINION AND ORDER

2005). Further, a doctor's work restrictions based on a claimant's subjective statements about symptoms are reasonably discounted when the ALJ finds the claimant not credible. See, e.g., Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009); see also Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004). Finally, an ALJ is not obliged to explicitly link his determination to his stated reasons, so long as he provides a sufficiently detailed summary of the facts and evidence from which the court can infer specific and legitimate reasons. Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989).

Here, the record reveals that Dr. Eckstein's opinion was based predominately on plaintiff's subjective complaints. Tr. 258-59, 261-62. Dr. Eckstein observed none of plaintiff's alleged symptoms first hand; instead, the doctor reported plaintiff was prompt and cooperative, showing no signs of abnormal speech, gait, or motor movements. Tr. 257. Dr. Eckstein also noted that plaintiff remained logical and coherent throughout the exam, despite appearing agitated and over talkative at times. Tr. 257. Moreover, the cognitive tasks that plaintiff performed for Dr. Eckstein suggested only mild impairments in numerical equations, word problems, general fund of knowledge, and abstract reasoning skills. Tr. 258-59. Yet, Dr. Eckstein diagnosed plaintiff with a number of serious disorders and opined that plaintiff was markedly limited in social functioning and had experienced four episodes of decompensation.

The ALJ is not obliged to accept a medical opinion unsupported by clinical findings or based on an uncredible claimant's

subjective reports. See Bayliss, 427 F.3d at 1216; Bray, 554 F.3d
at 1228; Batson, 359 F.3d at 1195. As discussed above, substantial
evidence in the record supports the ALJ's finding that plaintiff is
not credible. Also, as the ALJ points out, Dr. Eckstein's report
is not internally consistent, nor is it consistent with the
administrative record. Moreover, although Dr. Eckstein does not
specify so in her report, her assessment was based almost entirely
on plaintiff's subjective testimony, as the doctor's clinical
findings are minimal and do not support her diagnoses. Further, she
did not review any of the other objective medical evidence pursuant
to the evaluation. As such, the Court finds that the ALJ set forth
specific and legitimate reasons for not fully crediting Dr.
Eckstein's medical opinion. Consequently, the Court need not
address plaintiff's argument regarding meeting or equaling the
listing criteria.

## C. Plaintiff's RFC and Step Five Determination

Finally, plaintiff argues that the ALJ erred by failing to
incorporate limitations for all of her impairments in the RFC and
hypothetical questions posed to the VE. Specifically, plaintiff
alleges that the ALJ did not consider limitations assessed by
psychologist Keith Murdock, Ed.s.[4]

When assessing the RFC, the ALJ must consider limitations
imposed by all of claimant's impairments, even those that are not

_____

[4] Mr. Murdock provided his evaluation pursuant to the
Department of Human Services' "Learning Disability Assessment
Project," in order to assist in the development of a vocational
program for plaintiff. As such, Mr. Murdock was not tasked with
assessing plaintiff's allegedly disabling conditions. Tr. 213.

deemed severe. SSR 96-8p, available at 1996 WL 374184, *5. Further, the ALJ is required to consider all medical opinions and assess the weight to be afforded each opinion. 20 C.F.R. § 416.927. The ALJ, however, is not required to make his RFC findings "correspond precisely to any physician's findings." Wilberg v. Astrue, 2009 WL 1066260, *3 (E.D.Cal. Apr. 20, 2009). Additionally, RFC need only incorporate limitations found on the record. Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001).

Mr. Murdock concluded that plaintiff did not have a specific learning disability and was a low-average to average learner. Tr. 220-21. Mr. Murdock therefore opined that plaintiff's work ability was restricted by various factors other than a learning disability. Tr. 18, 220-21. Nonetheless, Mr. Murdock advised that an employer offer plaintiff praise, show "extreme patience," and set longer time limitations, or remove them altogether. Tr. 221-22. Mr. Murdock's report, however, makes clear that these accommodations are merely "recommendations" and are "not legally mandated," but rather are only "offered for consideration in helping [plaintiff] succeed" in her vocational program. Tr. 220.

Nevertheless, plaintiff argues that these statements went beyond suggestions and were, in fact, an "analysis of what Plaintiff 'can do' in spite of her mental limitations." Pl's Reply Br. 6; see also Pl's Opening Br. 19. Contrary to plaintiff's argument, the above-quoted language reveals that these statements are merely recommendations. Tr. 220. Mr. Murdock did not conclude, as plaintiff contends, that an employer would have to remove time

PAGE 14 - OPINION AND ORDER

limits for all projects, instead he only found it "advisable." Tr. 221. Alternatively, he suggests giving her time and a half to complete a project. Tr. 222. Neither of these suggestions amount to a impairment-related limitation.

Further, in determining plaintiff's RFC, the ALJ expressly considered Mr. Murdock's evaluation and, as a result, limited plaintiff's RFC to work thAI0at did not involve "understanding, remembering, and carrying out more than simple, routine, tasks," and only "casual contact with the general public and co-workers." Tr. 15-16, 18. Plaintiff fails to explain how these restrictions are inconsistent with Mr. Murdock's assessment, of which the vocational recommendations are but one element. Regardless, the Court finds that, when construed in its entirety and in conjunction with the other medical opinion evidence, the report of Mr. Murdock is consistent with plaintiff's RFC. Therefore, the ALJ did not err in failing to expressly include all of Mr. Murdock's vocational recommendations in his RFC assessment.

Because the ALJ properly concluded that Mr. Murdock's suggestions did not amount to additional limitations in the RFC, it follows that the ALJ was not obliged to include them in the hypothetical questions posed to the VE. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175-76 (9th Cir. 2008) (rejecting plaintiff's argument that the RFC and VE hypothetical were insufficient because they lacked limitations attested to in properly-discredited testimony); see also Osenbrock, 240 F.3d at 1164-65.

PAGE 15 - OPINION AND ORDER

Therefore, the ALJ's RFC determination and hypothetical questions are supported by substantial evidence in the record. Accordingly, the Court finds that the ALJ met his step-five burden.

## CONCLUSION

The Commissioner's decision is based on substantial evidence and the proper legal standard and is therefore affirmed. This case is dismissed.

IT IS SO ORDERED.

Dated this $20$ day of June 2012.

Ann Aiken
United States District Judge